UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CITIZENS FOR A RESPONSIBLE CURRICULUM, and PARENTS AND FRIENDS OF EX-GAYS AND GAYS, | ) ) ) | Case No. |
| | ) | Jury Demanded |
| Plaintiffs, | ) | |
| | ) | |
| against | ) | |
| | ) | |
| MONTGOMERY COUNTY PUBLIC SCHOOLS, MONTGOMERY COUNTY PUBLIC SCHOOLS BOARD OF EDUCATION, and JERRY WEAST, in his official capacity as Superintendent, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES**

COME NOW the Plaintiffs, Citizens for a Responsible Curriculum and Parents and Friends of Ex-Gays and Gays, by and through their undersigned counsel, and respectfully request this Court to issue Declaratory Judgment, Temporary, Preliminary and Permanent Injunctive Relief, and Damages. In support thereof, Plaintiffs show unto the Court as follows:

**INTRODUCTION**

1.      This is a civil action whereby Plaintiffs seek Declaratory Judgment, Temporary, Preliminary and Permanent Injunctive Relief enjoining Defendants Montgomery County Public Schools ("MCPS") and MCPS Board of Education ("MCPS Board"), its agents, servants and employees and those acting in active concert and with actual notice thereof, including Defendant Superintendent Jerry Weast ("Weast"), from acting in such a manner as to violate the Establishment

Clause of the First Amendment to the United States Constitution, as well as Plaintiffs' rights to Free Speech, Equal Protection, Substantive Due Process and Procedural Due Process guaranteed under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs also pray for Declaratory Judgment to determine the constitutionality and validity of curriculum ("Revised Curriculum"), teacher resources ("Teacher Resources") and condom video ("Protect Yourself video") (collectively, "Approved Curriculum"), adopted on November 9, 2004 by the MCPS Board for inclusion in the 8th and 10th grade health education courses and to declare the curriculum unconstitutional as a direct violation of Plaintiffs' rights protected by the First and Fourteenth Amendments to the United States Constitution. Plaintiffs further pray for nominal damages. An actual controversy exists between parties involving substantial constitutional issues in that the challenged curriculum violates the Establishment Clause, as well as Plaintiffs' rights to Free Speech, Equal Protection, Procedural Due Process and Substantive Due Process guaranteed under the First and Fourteenth Amendments to the United States Constitution.

2.    MCPS Board policies prohibit discrimination based on sexual orientation.

3.    MCPS Board policies require objective, factual instruction on all subjects, but particularly those that involve widely debated scientific theories and socially controversial issues.

4.    Revisions to the comprehensive health education, violate MCPS Board policies prohibiting discrimination based on sexual orientation and objective factual presentation of issues.

5.    The revisions to the comprehensive health education curriculum also were made in violation of state laws concerning development and instruction of the comprehensive health education curriculum.

6.      Requiring parents to opt out of biased, non-objective, non-scientific curriculum, on a socially controversial subject, violates MCPS Board policies protecting students' rights of privacy on sensitive moral and religious issues.

7.      The MCPS comprehensive health education curriculum, which presents a one-sided view on the scientifically-debated, socially controversial subject of "sexual orientation", forces parents who seek objective instruction to opt-out their students from the curriculum, thereby segregating the students from their peers and designating them as "separate" from other students.

8.      "Separate" was long-ago held not to be equal in American public schools.

9.      The approved health education curriculum prohibits presentation of an opposing viewpoint on the controversial subject of "sexual orientation", thereby restricting students' free speech rights.

10.     In violation of the Establishment Clause, the approved health education curriculum also specifically promotes a particular set of religious beliefs – those that affirm the homosexual lifestyle – and demonstrate hostility toward those that believe homosexuality is wrong, or that people can overcome same-sex attractions.

11.     Plaintiffs have attempted to resolve this issue with the MCPS, but to no avail.

12.     Plaintiffs seek temporary, preliminary and permanent injunctive relief to prevent Defendants from implementing the Revised Curriculum in a manner inconsistent with their constitutional rights, and damages.

13.     Plaintiffs also seek a declaratory judgment that the Revised Curriculum violates Plaintiffs' First and Fourteenth Amendment rights as threatened to be applied to Plaintiffs and others,

and that the curriculum is invalid.

## JURISDICTION AND VENUE

14.     This action arises under the First and Fourteenth Amendments to the United States Constitution, and under Federal Law, particularly 42 U.S.C. § 1983.

15.     This Court has jurisdiction of these claims under, and by virtue of, 28 U.S.C. § 1988.

16.     This Court is authorized to grant Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue the Permanent Injunctive Relief requested by Plaintiff under Rule 65 of the Federal Rules of Procedure.

17.     This Court has supplemental jurisdiction over the state laws claims pursuant to 28 U.S.C. § 1367.

18.     Venue is proper under 28 U.S.C. § 1391(b). Each and all of the acts alleged herein were done by Defendants within Montgomery County, and each of them, not as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs and uses.

## PARTIES

19.     Plaintiff CITIZENS FOR A RESPONSIBLE CURRICULUM ("CRC") is a non-profit organization representing taxpayers of Montgomery County, with students in the MCPS, who have united in their opposition to the Revised Curriculum and Teacher Resources. CRC maintains that teaching respect for persons with same-sex attraction is appropriate and right, but that the revised materials go beyond the ethic of teaching respect by demanding affirmation of a homosexual orientation and behavior, and in fact teach only one side of this controversial topic, ignoring

substantial health risks associated uniquely with same-sex sexual activity. The CRC opposes the Revised Curriculum and Teacher Resources insofar as they do not include reference to the ex-gay perspective, that students can overcome same-sex attractions, or that there is another perspective on the issue of sexual orientation, and because they were passed, and are being implemented, in violation of state laws and MCPS Board policies. The CRC also opposes the Approved Curriculum because they presents incomplete and misleading information concerning human sexuality. More than 4,000 Montgomery County residents have signed petitions opposing implementation of the Approved Curriculum.

20.     Plaintiff Parents and Friends of Ex-Gays and Gays ("PFOX"), is a non-profit organization, based in Virginia, with a chapter in Montgomery County, Maryland. PFOX promotes an inclusive environment for the ex-gay community, and works to eliminate negative perceptions and discrimination against former homosexuals and lesbians. PFOX conducts public education and community-building activities to further compassion and respect for all Americans, regardless of their sexual orientation. PFOX envisions communities characterized by more stable families and a tolerant understanding of sexual orientation. PFOX believes that individuals can overcome unwanted same-sex attractions. PFOX opposes the Approved Curriculum insofar as it does not include reference to the ex-gay perspective or that students can overcome same-sex attractions, and was passed, and is being implemented, in violation of state laws and district policies. PFOX also opposes the Approved Curriculum because it blatantly discriminates against ex-gays.

21.     Defendant MONTGOMERY COUNTY PUBLIC SCHOOLS ("MCPS") is a public school district organized and operating under the laws of the State of Maryland.

22.     Defendant MONTGOMERY COUNTY PUBLIC SCHOOLS BOARD OF EDUCATION ("MCPS Board") is responsible for adopting curriculum for classes taught within MCPS.

23.     DEFENDANT JERRY D. WEAST, is, and was at all relevant times, Superintendent of MCPS, vested with authority to determine whether to recommend the proposed curriculum for review by the MCPS Board.

## STATEMENT OF FACTS

*Development of the New Curriculum*

24.     In response to a recommendation from the MCPS Citizens Advisory Committee (the "CAC"), in November 2002, the MCPS Board voted to have revisions developed to the health education curriculum in grades 8 and 10 to include information about "sexual variation."

25.     According to the CAC, the changes were necessary because at that time homosexuality could not be discussed by staff, except in response to specific questions by students, and when asked, staff could only respond in a perfunctory manner.

26.     The CAC stated that it recognized "the concept of sexual orientation as an essential human quality; that individuals have the right to accept, acknowledge, and live in accordance with their sexual orientation, be they heterosexual, bisexual, gay, or lesbian."

27.     The CAC created a writing committee to develop a draft of the curriculum.

28.     The writing committee consisted of two MCPS health education teachers, an MCPS school psychologist, two MCPS school counselors, a school-community health nurse, a representative of the Montgomery County Mental Health Association, the MCPS coordinator of

health education, and two members of the CAC.

29.    From October 2003 through May 2004, the CAC discussed and considered proposed curriculum changes and teacher resource materials.

30.    By resolution, on November 9, 2004, the MCPS Board approved the Revised Curriculum, the Teacher Resources and Protect Yourself video evaluated and recommended by the CAC, as submitted in conjunction with the CAC's June 2004 annual report.

31.    The Revised Curriculum is an outline for teachers to follow in creating their lesson plans.

32.    Teachers are permitted to use the Teacher Resources to create their lesson plans.

33.    Teachers are prohibited from using non-approved resources to create their lesson plans.

34.    In the first part of April 2005, MCPS announced the six pilot schools where the Approved Curriculum would be tested.

35.    The three pilot high schools are: Bethesda Chevy Chase High School; Seneca Valley High School and Springbrook High School.

36.    The three pilot middle schools are: Martin Luther King Middle School; Tilden Middle School and White Oak Middle School.

37.    On or about April 19, 2005, MCPS announced May 5 would be the start date for the Approved Curriculum.

38.    Pursuant to MCPS Board policies, parent meetings are to be held two weeks before implementation of the curriculum in order to provide parents with the information they need to

decide whether to opt their children out of the curriculum.

39.    Pursuant to MCPS Board policies, parents must receive three weeks notice of the date on which the parent meeting will be held.

40.    Upon information and belief, MCPS is not providing all parents with the required three week notice of the parent meeting.

41.    Upon information and belief, MCPS is not holding all the parent meetings at least two weeks prior to implementation of the Approved Curriculum.

42.    Upon information and belief, MCPS is not making available at the parent meetings the approved Teacher Resources.

43.    Although state law and MCPS policies require prior parental permission before students can participate in any class session on human sexuality, see COMAR 13A.04.18.02 and Policy IGP-RA, the Approved Curriculum for the Grades 8 and 10 Mental Health Units, which contain references to sexual identity, do not require prior parental permission..

44.    Although the notices required by state law to be sent to parents in advance of implementation of the Approved Curriculum inform parents of the fact that parents must give prior permission for students to receive instruction on human sexuality, the notice characterizes the parents' exercise of that right as the right to opt-out, rather than prior permission, thereby requiring parents to segregate their student from the rest of their peers.

***The New Curriculum***

45.    The Approved Curriculum included revisions to, among other things: Grade 8 Mental Health Unit Curriculum, Grade 8 Family Life and Human Sexuality Curriculum,  Grade 10 Mental

Health Unit Curriculum, Grade 10 Safety, First Aid and Injury Prevention, and Grade 10 Family Life and Human Sexuality Curriculum.

46.    The Approved Curriculum included the following changes to the Grade 8 Mental Health Unit, (Ex. 1 hereto), which is a mandatory course that does not require prior parental permission:

a.    "sexual identity" as a factor that contributes to the liking of self;

b.    Acceptance of individual differences, including differences based on sexual identity, as a way to develop relationships and share equally.

47.    The Approved Curriculum included the following changes to the Grade 8 Family Life and Human Sexuality Curriculum, which is a mandatory course:

a.    Definition of "Human Sexuality" to include sexual identity;

b.    Definition of "Sexual Identity" to include a person's understanding of who he or she is sexually, including the sense of being male or female, with sexual identity comprising of "three interlocking pieces: gender identity, gender role and sexual orientation";

c.    Definitions of "Gender Identity", "Gender Role", "Sexual Orientation", "Homosexual", "Lesbian" and "Bisexual."

d.    Definitions for teacher reference of a "Questioning" student (one who is uncertain as to his sexual orientation), "Transgender", "Coming Out" and "Intersexed";

e.    Discussion of *family values* and cultural *beliefs* as a factor that influences stereotyping;

f.    Explanation that "different religions take different stands on sexual behaviors

Verified Complaint - Page 9

and there are different views among people of the same religion"; and

      g.     Discussion of "Problems Created by Contrasting Values/Beliefs."

48.     The Approved Curriculum also included a new section in the Grade 8 Family Life and Human Sexuality Curriculum that purports to dispel myths about a variety of topics, including the following:

      a.     "Myth: Homosexuality is a mental health disorder. Fact: All major professional mental health organizations affirm that homosexuality is not a mental disorder."

      b.     "Myth: If you are "straight", you can become a homosexual. Fact: Most experts in the field have concluded that sexual orientation is not a choice."

      c.     "Myth: Children of homosexual parents/guardians will become homosexuals. Fact: Having homosexual parents/guardians does not predispose you to being homosexual."

      d.     "Myth: You're a homosexual if you've had sex with, or even had a 'sexy dream' about someone of the same gender. Fact: Sex play with friends of the same gender is not uncommon during early adolescence and does not prove long-term sexual orientation."

49.     In April 2005, the MCPS Department of Curriculum and Instruction made changes to the Approved Curriculum, which included:

      a.     Instruction to teachers that the definitions for "human sexuality", "sexual identity", "gender identity", "gender role", "sexual orientation", "heterosexual", "homosexual", "lesbian" and "bisexual" are to be presented verbatim with "no additional information, interpretation or examples . . . to be provided by the teacher" (Ex. 1, p. 9);

      b.     Instruction to teachers to explain to the students in the "Myth/Fact" section

that the "myths are false, and the facts are true"

       c.    A change in the "Myth/Fact" discussion about whether sexual contact or "sexy dreams" in early adolescence has an impact on sexual orientation to "Myth: A person is a homosexual if he or she has ever been sexually attracted to, or ever had sexual contact with someone of the same gender. Fact: Fleeting attraction or contact does not prove long-term sexual orientation." (Ex. 1, at p.18).

    50.    The Approved Curriculum contains the following changes to the Grade 10 Mental Health Unit, which is a mandatory course that does not require prior parental permission (Ex. 2 hereto):

       a.    Inclusion of sexual orientation as a factor influencing self-concept, self-esteem, and assessment of one's body image; and

       b.    Inclusion of sexual identity as a factor influencing stress.

    51.    In April 2005, the MCPS Department of Curriculum and Instruction made changes to the Approved Curriculum, which included an instruction to teachers to state without discussion that sexual identity is a factor influencing stress.

    52.    The Approved Curriculum contains several changes to the Grade 10 Family Life and Human Sexuality Curriculum Unit ("Grade 10 Family Life Unit").

    53.    The Grade 10 Family Life Unit contains the same definitions as the Grade 8 Family Life and Human Sexuality Curriculum Unit concerning "sexual identity", "gender identity", "sexual orientation:, "heterosexual", "homosexual", "lesbian" and "bisexual."

    54.    The Grade 10 Family Life Unit also includes a definition of "questioning" as "people

who are uncertain as to their sexual orientation."

55.    The Grade 10 Family Life Unit also includes for teacher reference, definitions of "transgender", "coming out" and "intersexed".

56.    The Grade 10 Family Life Unit defines "family" as "two or more people who are joined together by emotional feelings or who are related to one another."

57.    The Grade 10 Family Life Unit includes discussion of same sex parents as one of several types of families.

58.    The Grade 10 Family Life Unit includes discussion of the impact of same sex relationships on family-related issues on society.

59.    The discussions in the Grade 10 Family Life Unit concerning family, types of family, and the impact of same sex relationships on family-related issues do *not* require prior parental permission for students to participate.

60.    The MCPS Board approved use of the "Protect Yourself" video.

61.    The Protect Yourself video, which features a young lady discussing condom usage, states that condoms should be used for "any oral, anal or vaginal sex."

### The Approved Teacher Resources

62.    One of the approved Grade 8 Teacher Resources is entitled "Lesson Plan: Sexual Orientation Myths – Planned Parenthood Association of Edmonton." (Ex. 3 hereto).

63.    One stated objective of the Lesson Plan is to identify a "wide range of options for sexual expression . . . ."

64.    The Lesson Plan contains a 12-question quiz.

65.     The Lesson Plan quiz asks whether "[h]omosexuality is abnormal and sick" and responds that "[i]t is no more abnormal or sick to be homosexual than to be left-handed."

66.     The quiz asks whether "[l]oving people of the same sex is immoral (sinful)" and responds that "Many religious denominations do not believe this. . . . What is universally understood is that intolerance and hatred is wrong."

67.     The quiz asks whether "Gay men, lesbians and bisexuals are promiscuous" and responds that "gays, lesbians and bisexuals, like heterosexuals, form a variety of relationships lasting from one night to many years. We may question our definition of 'promiscuous'; heterosexuals had a 49 percent divorce rate in 1995 . . . ."

68.     The quiz asks whether lesbians, gay men and bisexuals make good parents, and responds that "Heterosexual parents are consistently not found to be more loving or caring than gay parents."

69.     A Planned Parenthood Representative is listed as a guest speaker for the Grade 10 Family Life Unit (Ex. 2, at p.29).

70.     Another approved Grade 8 Teacher Resource is entitled "Myths and Facts" by the Family Pride Coalition (Ex. 4 hereto).

71.     The Family Pride Coalition describes itself as a "national, non-profit organization solely dedicated to equality for lesbian, gay, bisexual and transgender parents and their families.

72.     The Myths and Facts resource rejects the idea that children should be raised in a home with a mother and a father, states it is "unreason-able" [sic] to say heterosexual parents are better for children than same-sex parents, and states without citation to authority that homosexuals are just as

interested in finding committed, loving relationships as heterosexuals.

73.     The Myths and Fact resource offers a one-sided definition of morality (Ex. 4, at p.2).

74.     Another approved Teacher Resource is entitled "Myths and Facts", author unknown, which at one time was available on the website of Maricopa College, Arizona (Ex. 5 hereto).

75.     The Maricopa Myths and Facts resource states that:

    a.      "a certain portion of the population is exclusively homosexual";

    b.      "Human sexuality is a continuum";

    c.      "Many homophobic responses are born out of a fear that one's own sexual orientation may not be entirely heterosexual. People who overplay their cultural gender roles, who react negatively, or even cruelly to any deviation from these 'roles', may well be driven by a need to deny their own behavior or feelings";

    d.      "One's sexual and emotional orientations are fixed at a very early age . . . certainly by age five";

    e.      In response to the question whether homosexuality is a sin, the resource responds that the Bible contains only six passages which condemn homosexuality, that "Jesus said absolutely nothing at all about homosexuality", that "[r]eligion has often been misused to justify hatred and oppression", and then cites specific churches that support certain rights for homosexuals.

    f.      "Trying to change one's sexual response to straight or gay is usually unsuccessful."

76.     One of the approved resources cited to support the Grade 8 curriculum is "A Silent Crisis: Creating Safe Schools for Sexual Minority Youth", which was written by the Triangle

Foundation.

77.    The Triangle Foundation is a self-identified homosexual advocacy organization that states without citing authority that few say their homosexual attraction has changed and that most mental health and religious establishments oppose reparative therapy.

78.    One of the approved Grade 10 Teacher Resources is entitled "Respecting the Rights of GLBTQ Youth, A Responsibility of Youth-Serving Professionals", which is written by Advocates for Youth.

79.    The Respecting GLBTQ Youth resource, which is 19 pages long, explains that discussing "abstinence until marriage" is detrimental to "GLBT youth" because the group believes it will "stigmatize homosexuality."

80.    The Respecting GLBTQ Youth resource explains that most of us are products of a "trans-phobic society that holds rigid gender roles. We have been influenced by misinformation and fear."

81.    The Respecting GLBTQ Youth resource states that "It is perfectly natural to be gay, lesbian, bisexual, and/or transgender. . . . Assure the young person that he/she is absolutely normal."

82.    The Respecting GLBTQ Youth resource explains that teachers should "[d]iscuss sexual behaviors explicitly rather than assuming that everyone defines sexual sexual intercourse in the same way."

83.    Another approved Grade 10 Teacher Resource is entitled "Bullying in Schools: Harassment Puts Gay Youth at Risk" by the National Mental Health Association.

84.    The National Mental Health Association has published other materials taking the

position that there is no research demonstrating that reparative therapy is successful, and that "every mainstream mental health and medical organization says these methods may be harmful."

85.    The Bullying in Schools resource states that homosexual teens are at high risk because "their distress is a direct result of the hatred and prejudice that surround them, not because of their inherently gay or lesbian identity orientation."

86.    The Bullying in Schools resource encourages schools to start a Gay, Lesbian and Straight Education Network chapter.

87.    The Bullying in Schools resource links to the Association of Gay and Lesbian Psychiatrists, the Gay, Lesbian and Straight Education Network, the Human Rights Campaign and Parents, Families and Friends of Lesbians and Gays.

88.    Another approved Grade 10 Teacher Resource is "Lesbian, Gay, and Bisexual Youth Q & A" published in a 2002 volume of The Prevention Researcher.

89.    The Q & A resource explains that "youth, on average, become aware of same-sex feelings at age 10 . . . ."

90.    The Q & A resource further states that certain religious groups are more likely to believe people can overcome same-sex attraction, specifically mentioning "fundamentalists" and "evangelicals" as less tolerant of homosexuals, that "fundamentalist" consider homosexuality to be sinful, and that it is important to refer students with those religious beliefs to "sensitive clergy" who can help them reconcile the students' religious beliefs and their same-sex attractions. (Ex. 6, at p.3).

91.    The Q & A resource names specific lesbian and gay religious organizations that affirm the homosexual lifestyle.

*Rejected Teacher Resources*

92.     Every proposed teacher resource submitted by the PFOX designee on the CAC, that discussed the ex-gay perspective or that people can overcome same-sex attraction, was rejected by the CAC.

93.     In an April 25, 2004 e-mail to members of the CAC and MCPS Board, David Fishback, Chair of the CAC defended the CAC's curriculum changes, including its rejection of ex-gay or reorientation therapy materials, explaining his belief that reorientation therapy is potentially very dangerous (Ex. 7, at p.2).

94.     Mr. Fishback explained that "efforts earlier in the last century to 'change' homosexuals . . . resulted in extremely bad outcomes" and that because of those experiences that certain American mental health groups "conclude[d] that being gay or lesbian was just another way to be . . . ." (Ex. 7, at p.3).

95.     Mr. Fishback also stated his position that "to suggest that, through extraordinary efforts, people can change their sexual orientation, would not only be destructive, but could even open up the school system to legal liability." (Ex. 7, at p. 3-4).

96.     Mr. Fishback explained that the proposed teacher resources offered by CAC member, PFOX-designee Jackie Rice "on its face, contained simple generalities" of the fact that people can overcome same-sex attraction, but that a review of the websites linked in the pamphlet revealed that "every single site was premised on the proposition that homosexuality was a disease and/or that homosexuality was forbidden by scripture. None of these sites presented credible scientific or mental health studies to support their contentions that homosexuality . . . is 'curable.'" (Ex. 7, at p.4).

97.    Mr. Fishback explained that the reason materials discussing the ex-gay perspective were not included was because the ex-gay perspective was not at all convincing to the majority of the CAC, "[t]he vast majority of the Committee had greater trust in every mainstream American medical and mental health professional association and in their own common sense and experience in the world than in the materials set forth by PFOX and similar groups and individuals."

98.    Ex-gay viewpoint materials were rejected primarily because of the CAC's incorrect belief that the ex-gay literature was faith based, and ex-gay literature was not supported by "mainstream" medical organizations.

99.    Omission of the ex-gay perspective ignores the evidence obtained from scientific studies, conclusions of medical professionals who counsel those overcoming same-sex attraction, and the countless who have overcome same-sex attractions.

100.    The CAC, and the MCPS Board, rejected a PFOX brochure for students explaining that there is no evidence that people are born gay and that simply because a person has same-sex attractions does not mean he must identify himself as gay.

101.    The first time the PFOX brochure was rejected, the CAC objected to websites linked in the brochure because the CAC believed the sites came from a religious perspective.

102.    The second submission of the PFOX brochure, this time to the MCPS Board, omitted links to websites with religious content, and included links to medical associations and support organizations, that help people overcome same-sex attractions, but still was rejected. (Ex. 8 hereto).

103.    The CAC rejected a PFOX brochure entitled "Can Sexual Orientation Change?" which discusses the fact that ex-gays are living proof that sexual reorientation can be successful.

104.    The CAC rejected a brochure by entitled "The Homophobia Stops Here", which is authored by Inqueery, an organization founded by an ex-gay student to help other students who struggle with same-sex attraction.

105.    The CAC rejected a brochure from the National Educator's Association ("NEA") Ex-Gay Educators Caucus explaining its platform that it believes people can choose not to act out on their same-sex attractions. (Ex. 9 hereto).

106.    The CAC rejected an article by Dr. Warren Throckmorton explaining reparative (or reorientation) therapy. (Ex. 10 hereto).

107.    The CAC rejected a PFOX pamphlet entitled "Facts About Homosexuality', which explains that there are no scientific studies supporting specific biological etiology for homosexuality.

108.    The CAC rejected a submission by PFOX entitled "American Psychiatric and Psychological Association Members Support Sexual Reorientation"

109.    The CAC rejected a submission by PFOX, authored by New Direction for Life, entitled "Promoting Clarity, Offering Choices: Understanding and responding to youth who have questions about their sexual orientation."

110.    The CAC rejected a submission by PFOX, authored by the National Association for Research and Therapy of Homosexuality ("NARTH"), discussing sexual reorientation, which included statements by present and past leaders of the American Psychological Association that support reparative therapy for those who seek to overcome same-sex attraction.

111.    The Approved Curriculum and Teacher Resources do not represent or discuss the ex-gay perspective.

112.    The CAC and/or MCPS Board also rejected 2002-2003 materials from the U.S. Centers for Disease Control entitled "Need for Sustained HIV Prevention Among Men Who Have Sex With Men," "Women Who Have Sex With Women," "U.S. Syphilis Rates Climb for Second Consecutive Year," Young People at Risk," and "New CDC Studies Shed Light on Factors Underlying High HIV Infection Rates Among Gay and Bisexual."

113.    The CAC and/or MCPS Board rejected 2002 statistics from the U.S. Department of Justice concerning Hate Crimes, which contradicted certain information contained in the approved Teacher Resources.

114.    The CAC and/or MCPS Board rejected a National Institute of Mental Health report concerning suicide among teens.

***State Laws and District Policies Concerning Curriculum Content***

115.    Pursuant to state statute, comprehensive health education instructional programs are required to be taught in grades K-12. (COMAR 13A.04.18.02).

116.    The comprehensive health education instruction is to be organized around three focus areas: interpersonal relationships; physiological and personality changes; and advanced physiology and psychology of human sexual behavior. (COMAR 13A.04.18.03)

117.    Each of those three areas are to be handled in a distinctly different manner.

118.    Focus Area One – Interpersonal Relationships – is concerned with family life and interpersonal relationships both within and outside the family. (COMAR 13A.04.18.03 (B)(1)).

119.    Focus Area One is to be a part of the regular curriculum for all students in grades K-12, and shall be included within the framework of existing subject areas.

120.    The subjects emphasized in Focus Area One include: (i) self-respect, (ii) mutual respect, (iii) consideration of the needs of others, (iv) affection and love, (v) variety of family structures and roles of family members, (vi) male and female roles in American society, and (vii) moral and ethical implications of behavior.

121.    Focus Area Two – Physiological and Personality Changes – is concerned with the physiological and personality changes related to maturation and human reproduction. (COMAR 13A.04.18.03(B)(2)).

122.    Focus Area Two materials are to be presented as an identifiable unit within the total comprehensive health education program.

123.    State law requires local school systems to develop a prescribed procedure for consultation and discussion with community groups concerning the program of human reproduction. (COMAR 13A.04.18.03(B)(2)(b)).

124.    The subjects addressed in Focus Area Two include: (i) physical maturation, (ii) emotional maturation, (iii) human reproduction, (iv) the birth process, (v) infant care, (vi) growth and development during early childhood, and (vii) the physiology of aging.

125.    Parents can opt their children out of the Focus Area Two Unit. (COMAR 13A.04.18.03(B)(2)(c)).

126.    Focus Area Three – Advanced Physiology and Psychology of Human Sexual Behavior – is concerned with the advanced physiology and psychology of human sexual behavior and related matters and may be offered as an elective course at either the middle or high school level. (COMAR 13A.04.18.03(C)).

127.    Focus Area Three materials are to be offered as an identifiable *elective* course. (COMAR 13A.04.18.03(B)(3)(a) & (b)).

128.    Pursuant to state laws and district policies, Focus Area Three courses require prior written parental permission. (COMAR 13A.04.18.03(B)(3)(b)).

129.    The subjects addressed in Focus Area Three include: (i) maturation, (ii) the reproductive process, (iii) sexual variations, (iv) contraception, (v) premarital intercourse, (vi) marriage and family responsibilities, (vii) family planning, and (viii) sexually transmitted diseases.

130.    To the extent subjects identified in Focus Area Three are already taught in the curriculum of other courses, the statute permits the schools to continue to teach the subject in those other courses. (COMAR 13A.04.18.03(B)(3)(d)).

131.    District policy IGP-RA clarifies that Focus Area Three must be taught in identifiable units, except when topics of disease organisms are studied in microbiology or bacteriology, when human population density, growth curves and natural or imposed controls are part of the scientific study of genetics, animal behavior and zoogeography, or when instruction in home economics deals with the topics of marriage and family responsibilities from the standpoint of family decision making and budget planning. (IGP-RA(B)(3)(e)).

132.    Whether taught as an identifiable distinct unit or portions integrated into existing courses, prior parental permission is required before students can receive instruction on human sexual behavior. (IGP-RA(B)(3)(a)).

133.    State law dictates that "erotic techniques of human intercourse" may not be discussed. (COMAR 13A.04.18.03(B)(3)(b)).

134.    State law mandates that all instruction in Focus Area Three "shall be objective and carefully supervised." (COMAR 13A.04.18.03(B)(3)(b)).

135.    State law requires the local school system to examine proposed curriculum for factual content. (COMAR 13A.04.18.03(C)(2)).

136.    District Policy IFA states that curriculum is fundamental to what MCPS is trying to accomplish, and therefore is shall be regularly revised to the level of the best models it can find. (IFA(B)).

137.    District Policy IFA states that a focused curriculum is one that is "well-balanced", and "reflects current research." (IFA(D)(1)).

138.    District Policy IFA indicates that the curriculum should reflect current research, best practices, data and technological advancements within the disciplines. (IFA(D)(3)).

139.    District Policy IFB states that the Board of Education shall approve proposed curriculum.

140.    District Policy IIB-RA requires that all instructional materials "shall be relevant to and reflective of the multicultural society and global community." (IIB-RA(IV)(C)(1)(e)(1)).

141.    District Policy IIB-RA states that "[a]s appropriate, the materials shall provide students with the opportunity to investigate, analyze, and evaluate social issues." (IIB-RA(IV)(C)(1)(e)(3)).

142.    Maryland Code requires that students learn to develop and use skills for making responsible decisions about sexual behavior based on its consequences for the individual and others. (COMAR 13A.04.18.02(F)(8)).

143.    District Policy ACB states that the Board of Education is committed to ensuring that education is provided "in an atmosphere where differences are understood and appreciates, and where all persons are treated fairly and with respect in an environment free of discrimination and threats of violence or abuse." (ACB(C)(1)).

144.    District Policy ACB states that Montgomery County Public Schools will be free of incidents involving "disrespectful behavior, prejudicial action, hate/violence, and/or illegal discrimination, in particular those based on race, color, national origin, religion, gender, age, marital status, socio-economic status, sexual orientation, physical characteristics, or disability." (ACB(D)).

145.    All staff members are accountable for implementation of District Policy ACB. (ACB(C)(3)).

146.    District Policy JFA-RA sets for Student Rights and Responsibilities.

147.    Pursuant to JFA-RA, school staff and administration will promote a positive learning environment that is safe and holds mutual respect as an expectation. (JFA(III)(B)(1)(a)(1)).

148.    Pursuant to JFA-RA, teachers must consider all instructional materials and activities for subtle, potential sources of embarrassment. (JFA(III)(C)(3)).

149.    JFA-RA dictates that when a parent exercises her right to opt a student out of a particular activity, the teacher is to provide an alternative activity that "does not call attention to the student's grades, religion, values or physical condition." (JFA(III)(C)(4)).

150.    JFA-RA requires a teacher to encourage students to analyze and evaluate information before forming conclusions. (JFA(III)(F)(1)(a)(3)).

151.    JFA-RA requires teachers to "[a]ssure the presentation of a variety of viewpoints on

controversial topics within the limitations imposed by state or county curriculum documents." (JFA(III)(F)(1)(a)(1)).

152.    School personnel are required, pursuant to JFA-RA to assure that religious beliefs or particular religious beliefs are not advocated in school-sponsored activities, and that no school-sponsored course is religious in nature. (JFA)(III)(I)(1)(b)).

153.    The MCPS website contains a five-page statement by MCPS concerning the philosophy and course description of the High School Comprehensive Health Education.

154.    The website states that "[i]t is essential that information provided to students be factually accurate and current. . . . As a general rule, resources that are more than five years old should be carefully scrutinized, and if at all possible should be replaced."

155.    State law explains that in the HIV/AIDS curriculum, students are to learn, among other things, about (i) methods of the spread of HIV/AIDS, and (ii) information on the available research concerning HIV/AIDS. (COMAR 13A.04.18.04).

156.    State law prohibits the introduction of the subject of religious education as part of the school curriculum. (COMAR 13A.04.04.01).

157.    MCPS Board policies require that MCPS curriculum not invade the privacy of any student or family, and that classroom discussions are to encourage respect for personal relationships within a student's family. ((IGP-RA(III)(A)(1)).

### State Laws and District Policies Concerning Creation of Curriculum

158.    District Policy IGP-RA requires teachers to use only MCPS-approved materials when implementing the comprehensive health education courses. (IGP-RA(III)(4)(b)).

159.    District Policy BMA provides that the MCPS Board will endeavor to appoint curriculum advisory committees balanced by geographic area, race, ethnicity, gender and a range of viewpoints. (BMA(C)(2)(b)).

160.    District Policy IFA-RA defines "curriculum advisory committee" as representatives from stakeholder groups, reflecting socioeconomic, linguistic and cultural diversity of MCPS. (IFA-RA)(C)(12)).

161.    District Policy IFA-RA requires that the responsibilities of curriculum advisory committee members include representing their constituents, providing input from the constituents, seeking clarification on relevant issues and communicating to the larger community. (IFA-RA(D)(2)(a)).

162.    State law requires local school districts to establish procedures for evaluating and selecting instructional materials. (COMAR 13A.04.18.03(C)).

163.    Local school districts are required to appoint a joint committee of educators and representatives of the community that shall examine all instructional materials proposed to be used in the schools. (COMAR 13A.04.18.03(C)(2)).

164.     State law requires that the curriculum shall be developed by professional educators within the local school system, in consultation with a local citizen advisory committee. (COMAR 13A.04.18.03(D)(1)).

165.    State law mandates that the local citizen advisory committee broadly represent the views of the community. (COMAR 13A.04.18.03(D)(1)).

166.    The joint committee's recommendations are to be submitted to the local

superintendent of schools and the local board of education for final decision on implementation of curriculum. (COMAR 13A.04.18.03(C)(2)).

167.    All instructional materials adopted as part of a local school district's comprehensive health education courses must provide special opportunities for parents to view "all instructional materials" to be used in the program before the materials are used in the classroom. (COMAR 13A.04.18.03(C)(3)).

168.    State law also requires that teachers teaching an identifiable unit in Focus Areas Two or Three must have additional preparation in content and teaching methods for those materials. (COMAR 13A.04.18.03(E)(3)).

169.    State law explains that the comprehensive health education curriculum shall provide for the diversity of student needs and shall include statutorily identified goals and subgoals. (COMAR 13A.04.18.02)

170.    Some of the goals and subgoals specified by statute include the ability to: (i) develop and use decision-making skills, (ii) recognize the family as a basic unit of society that perpetuates life, (iii) explain the effects of dating and marriage on the individual, (iv) analyze the effects of parenthood on the individual, marriage partners, and the family, (v) examine factors that influence the development of sexual behavior, (vi) develop and use skills for making responsible decisions about sexual behavior, and (vii) identify communicable and noncommunicable diseases and describe their causes and characteristics. (COMAR 13A.04.18.02).

171.    State law requires each school to establish a local school-community planning group composed of parents, teachers, school administrators and students. (COMAR 13A.04.18.03(D)(2)).

172.    The local school-community planning group will review district and state regulations, the materials to be used for instruction, and the plan for evaluating the program in order to assist in planning the state-required parent information meeting. (COMAR 13A.04.18.03(D)(2)).

***What the Revised Curriculum Does Not Discuss***

173.    The Approved Curriculum does not mention that homosexual men are in the highest risk group for certain sexually transmitted diseases, including anal cancer, HIV, HPV (human papilloma virus) and syphilis.

174.    The Approved Curriculum does not positively explain or discuss that people can overcome same-sex attraction.

175.    The Approved Curriculum does not explain or discuss the physiology of same-sex sexual contact between men, and the negative physical consequences of that contact.

176.    The Approved Curriculum does not discuss those reports from Scandinavia demonstrating that the mental and physical condition of homosexuals is not significantly better than in countries allegedly less accepted.

177.    The Approved Curriculum does not discuss the scientific literature discussing reparative therapy.

178.    As a direct and proximate result of Defendants' continuing violation of Plaintiffs' rights, Plaintiffs will suffer injury.

179.    There is a great likelihood that Plaintiffs will prevail on the merits in this case because Defendants' actions in discriminating against gays, ex-gays and those with beliefs (both secular and religious) that people can overcome same-sex attraction, violates the federal guarantee

of equal protection, the First Amendment guarantee of Free Speech, the substantive and procedural due process guarantees under the Fourteenth Amendment, and the Establishment Clause.

180.    Based on the young, impressionable age of the students involved, and the potential for misinformation concerning "sexual identity" to negatively impact students, Plaintiffs will suffer great and immediate irreparable harm absent an injunction.

181.    The balance of equities tips decidedly in favor of Plaintiffs who seek to have MCPS comply with its policies concerning non-discrimination, accurate factual representations in curriculum, and representation of diverse views in developing curriculum.

182.    Remedies at law in these circumstances are inadequate.

## FIRST CAUSE OF ACTION

### Violation of Equal Protection of the Laws
### Guaranteed Under the U.S. Constitution

183.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 182 as if fully set forth herein.

184.    Plaintiffs' right to equal protection under the laws is protected by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

185.    MCPS Board policies prohibit discrimination based on sexual orientation.

186.    MCPS Board policies require staff to promote a positive learning environment that holds mutual respect for others.

187.    MCPS Board policies require the presentation of a variety of viewpoints on controversial topics.

188.    The Approved Curriculum was adopted, at least in part, for the purpose of eliminating any discrimination or hostility toward people based on their sexual orientation.

189.    The Approved Curriculum conveys the message that homosexuality is a normal sexual variation.

190.    The Approved Curriculum includes literature and materials that promote acceptance of homosexuality.

191.    The Approved Curriculum does not positively discuss the fact that people have overcome same-sex attractions.

192.    The Approved Curriculum negatively portrays the belief that people can overcome same-sex attractions.

193.    The Approved Curriculum negatively portrays reparative therapy.

194.    The Approved Curriculum negatively portrays those who believe people can overcome same-sex attractions.

195.    Students who are ex-gay or overcoming same-sex attractions are treated differently than those students who are embracing, or acting out on, their same-sex attractions.

196.    Defendants treat students differently based on their "sexual orientation."

197.    Students who are ex-gay, overcoming same-sex attraction, or believe that people can overcome same-sex attraction are being told by MCPS that their beliefs are wrong, and that those beliefs are not welcome in classroom discussions.

198.    Further exacerbating this hostile, discriminatory climate, Defendants force ex-gays, those overcoming same-sex attraction and those who believe people can overcome same-sex

attraction to either sit silently as they are told their views are wrong, or to participate in alternative, independent study programs.

199.    Students are forced to choose between remaining silent in class as District personnel instruct fellow students that Plaintiffs' beliefs are wrong or opting out and thereby segregating themselves from their peers based on the viewpoint that people can overcome same-sex attraction.

200.    Defendants' actions treat Plaintiffs and those students and parents who are ex-gay, overcoming same-sex attraction, or believe people can overcome same-sex attraction, differently from other similarly situated individuals and groups on the basis of the content of their speech and viewpoint, as well as their ideological, moral and religious beliefs.

201.    Defendants are purposefully discriminating against ex-gays, those overcoming same-sex attraction and those who believe people can overcome same-sex attraction by refusing to include in the Approved Curriculum any reference or discussion of ex-gays or that people can overcome same-sex attraction.

202.    Defendants refused to adopt provide Teacher Resources that positively discuss the ex-gay perspective, or reparative therapy, thus ensuring that teachers are not trained to assist students who are overcoming, or seek to overcome, their same-sex attractions.

203.    Defendants' actions unconstitutionally discriminate against Plaintiffs.

204.    Defendants do not have a rational basis for such disparate treatment.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

## SECOND CAUSE OF ACTION
### Free Speech Violation under the First Amendment

205.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 204 as if fully set forth herein.

206.    The Approved Curriculum prohibits students from discussing the view that homosexuality is wrong, or that people can overcome their same-sex attraction.

207.    The Approved Curriculum specifically instructs teachers to state without discussion, the various definitions concerning homosexuality, gender identity, lesbian, gay, bisexual and questioning.

208.    The Approved Curriculum conveys only one viewpoint on a controversial issue.

209.    Defendants' actions violate MCPS Board policies guaranteeing students the right to be presented with a "variety of viewpoints on controversial topics" and the right to "expression of individual views so that students may weigh alternate ideas and form their own opinions."

210.    The Approved Curriculum prevents students from acquiring useful and essential information concerning same-sex sexual conduct and same-sex attractions.

211.    The Approved Curriculum prevents students from acquiring information concerning reparative therapy or the fact that people can overcome same-sex attractions.

212.    In order to avoid the biased discussion of "sexual orientation," students and parents are forced to speak out on a sensitive, private subject before the students can be excused from the Family Life and Human Sexuality unit.

213.    Defendants' actions constitute impermissible viewpoint-based and content-based

restrictions of constitutionally protected expression.

214.    The policies and practice of the Defendants are prior restraints and restrictions on student speech.

215.    Defendants' actions are not content-neutral time, place and manner restrictions on expression.

216.    Defendants' actions are not narrowly tailored.

217.    Defendants' actions do not serve significant government interests.

218.    Defendants' actions do not leave open ample alternative channels of communication.

219.    Defendants' actions unconstitutionally chill and abridge the Plaintiffs' Free Speech rights guaranteed by the First Amendment.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

### THIRD CAUSE OF ACTION
### Establishment Clause Violation

220.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 219 as if fully set forth herein.

221.    The Establishment Clause prohibits preference of one set of religious beliefs over another.

222.    The Establishment Clause prohibits endorsement of particular religious beliefs.

223.    The Establishment Clause prohibits the government from showing hostility toward religion, or toward a particular religious belief.

224.    District policies prohibit instruction on religion.

225.    The Approved Curriculum negatively portrays those who believe homosexuality is wrong, or that people can overcome same-sex attractions.

226.    The Approved Curriculum states that certain religions are more "tolerant" of homosexuality than other.

227.    The Approved Curriculum specifically identify churches that affirm the homosexual lifestyle.

228.    The Approved Curriculum conveys one view on what Jesus did and did not say about homosexuality.

229.    The Approved Curriculum conveys the idea that those religions who believe homosexuality is wrong or that people can overcome same-sex attraction are intolerant and hateful.

230.    The Approved Curriculum discusses that those working with students from religious backgrounds that disapprove of homosexuality should be referred to "sensitive clergy."

231.    The Approved Curriculum prefers those religious beliefs that affirm homosexuality to those religious beliefs that believe homosexuality is wrong or that people can overcome same-sex attractions.

232.    Defendants refused to include as teacher resources or curriculum materials from the ex-gay perspective, or materials that discuss the ability of people to overcome same-sex attraction, because Defendants believed those materials were based entirely, or in part, on religious beliefs.

233.    Defendants, however, accepted as Teacher Resources discussing "lesbian and gay religious organizations."

234.    Defendants accepted Teacher Resources that negatively portray those religious beliefs that believe people can overcome same-sex attraction.

235.    Defendants' actions have no secular purpose.

236.    Defendants have no compelling justification for their actions.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

## FOURTH CAUSE OF ACTION
### Substantive Due Process under the U.S. Constitution

237.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 236 as if fully set forth herein.

238.    Defendants have adopted a curriculum that results in intentional discrimination to Plaintiffs' legal rights in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

239.    Parents have a fundamental right to direct the educational upbringing of their children.

240.    MCPS, in adopting and implementing the Approved Curriculum, are interfering with the parents' rights to direct the educational upbringing of their children on a topic subject to ongoing scientific and social debate.

241.    When parents opt their students out of classroom instruction, District policies require teachers to provide an alternative and equally meaningful activity in a manner that does not call attention to the student's grades, religion, values or physical condition.

242.     District policies also require teachers to avoid presentation of classroom materials that pose even "subtle, potential sources" of embarrassment or invasions of the privacy rights guaranteed by District policies.

243.     MCPS, in adopting and implementing the Approved Curriculum, are interfering with the rights guaranteed by District policies that students will not be forced to reveal their private views on controversial and sensitive religious beliefs or values.

244.     Defendants have deprived students of the opportunity to learn an opposing viewpoint on the controversial subject of sexual orientation.

245.     Defendants have no compelling interest in implementation of the biased curriculum to justify invasion of Plaintiffs' fundamental right to direct the upbringing of their children, and the rights guaranteed by District Policies not to be forced to reveal private religious or moral beliefs.

246.     In light of Defendants' non-discrimination policy prohibiting discrimination based on sexual orientation, Defendants have no compelling interest in depriving students of the opportunity to learn about the viewpoint that people can overcome same-sex attractions, or about the substantial health risks associated with same-sex sexual contact.

247.     No amount of process after implementation of the curriculum can correct the receipt by students this semester of biased, non-factual instruction on a controversial subject that carries the risk of subjecting students to significant health risks.

248.     No amount of process after parents are forced to opt their students out of the curriculum will remedy the fact that students are forced to reveal private moral, ideological and/or religious beliefs on a controversial subject.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

### FIFTH CAUSE OF ACTION
### Procedural Due Process under the U.S. Constitution

249.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 248 as if fully set forth herein.

250.    Based on MCPS Board policies, students who are ex-gay, overcoming same-sex attraction, or believe that students can overcome same-sex attraction, have a protected interest in attending school without being subject to discrimination by district employees based on their sexual orientation and/or religious or moral beliefs.

251.    Based on State law and MCPS Board policies, all students have a protected interest in being objectively taught on controversial subjects.

252.    Based on State law and MCPS Board policies, parents have the right to receive adequate notice of the required parent information meetings.

253.    Upon information and belief, the required notices were not sent far enough in advance of the parent meetings.

254.    Based on State law and MCPS Board policies, parents have the right to attend parent information meetings two weeks prior to implementation of the Approved Curriculum.

255.    Upon information and believe, certain parent information meetings were not held two weeks prior to the planned implementation of the Approved Curriculum.

256.    Defendants' actions in approving the revised curriculum violates district policies on

non-discrimination, objective teaching of controversial subjects, and privacy rights of students.

257.    Defendants created the Approved Curriculum in violation of state laws and district policies that require representation of diverse community viewpoints.

258.    Defendants approved the curriculum without affording the community adequate opportunity for comment.

259.    Defendants' implementation of the Approved Curriculum violates state laws that require comprehensive health education to be taught in three distinct focus areas.

260.    Plaintiffs have repeatedly made their specific objections known to MCPS.

261.    MCPS officials refuse to correct the violations.

262.    By failing to follow District policies and state law, Defendants are violating Plaintiffs' Procedural Due Process Guarantees of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

**SIXTH CAUSE OF ACTION**
**Maryland Constitution Art. 24 Due Process**

263.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 262 as if fully set forth herein.

264.    Defendants have adopted a curriculum that results in intentional discrimination to Plaintiffs' legal rights in violation of the Due Process Clause of the Maryland Constitution.

265.    Parents have a fundamental right to direct the educational upbringing of their children.

266.    MCPS, in adopting and implementing the Approved Curriculum, are interfering with the parents' rights to direct the educational upbringing of their children on a topic subject to ongoing scientific and social debate.

267.    When parents opt their students out of classroom instruction, District policies require teachers to provide an alternative and equally meaningful activity in a manner that does not call attention to the student's grades, religion, values or physical condition.

268.    District policies also require teachers to avoid presentation of classroom materials that pose even "subtle, potential sources" of embarrassment or invasions of the privacy rights guaranteed by District policies.

269.    MCPS, in adopting and implementing the Approved Curriculum, are interfering with the rights guaranteed by District policies that students will not be forced to reveal their private views on controversial and sensitive religious beliefs or values.

270.    Defendants have deprived students of the opportunity to learn an opposing viewpoint on the controversial subject of sexual orientation.

271.    Defendants have no compelling interest in implementation of the biased curriculum to justify invasion of Plaintiffs' fundamental right to direct the upbringing of their children, and the rights guaranteed by District Policies not to be forced to reveal private religious or moral beliefs.

272.    In light of Defendants' non-discrimination policy prohibiting discrimination based on sexual orientation, Defendants have no compelling interest in depriving students of the opportunity to learn about the viewpoint that people can overcome same-sex attractions, or about the substantial health risks associated with same-sex sexual contact.

273.    No amount of process after implementation of the curriculum can correct the receipt by students this semester of biased, non-factual instruction on a controversial subject that carries the risk of subjecting students to significant health risks.

274.    No amount of process after parents are forced to opt their students out of the curriculum will remedy the fact that students are forced to reveal private moral, ideological and/or religious beliefs on a controversial subject.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

### SEVENTH CAUSE OF ACTION
### Ultra Vires

275.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 274 as if fully set forth herein.

276.    The Approved Curriculum is invalid as an ultra vires act of the MCPS Board.

277.    The MCPS Board lacks authority to implement the new curriculum given the underlying violations of state laws and district policies.

278.    Based on MCPS Board policies, students who are ex-gay, overcoming same-sex attraction, or believe that students can overcome same-sex attraction, have a protected interest in attending school without being subject to discrimination by district employees based on their sexual orientation and/or religious or moral beliefs.

279.    Based on State law and MCPS Board policies, all students have a protected interest in being objectively taught on controversial subjects.

280.    Based on State law and MCPS Board policies, parents have the right to receive adequate notice of the required parent information meetings.

281.    Upon information and belief, the required notices were not sent far enough in advance of the parent meetings.

282.    Based on State law and MCPS Board policies, parents have the right to attend parent information meetings two weeks prior to implementation of the Approved Curriculum.

283.    Upon information and believe, certain parent information meetings were not held two weeks prior to the planned implementation of the Approved Curriculum.

284.    Defendants' actions in approving the revised curriculum violates district policies on non-discrimination, objective teaching of controversial subjects, and privacy rights of students.

285.    Defendants created the Approved Curriculum in violation of state laws and district policies that require representation of diverse community viewpoints.

286.    Defendants approved the curriculum without affording the community adequate opportunity for comment.

287.    Defendants' implementation of the Approved Curriculum violates state laws that require comprehensive health education to be taught in three distinct focus areas.

288.    Upon information and belief, implementation of the Approved Curriculum violates state law requiring teachers to receive specific, additional training prior to teaching the new curriculum.

289.    The Approved Curriculum violates state law prohibiting discussion of erotic sexual techniques insofar is it discusses the use of condoms for oral or anal sex.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1.     That this Court issue a Temporary Restraining Order restraining Defendants from implementing the Approved Curriculum.

2.     That this Court issue Preliminary and Permanent Injunctions against Defendants and their officers, agents, employees and all other people acting in concert with them, from implementing the Approved Curriculum.

3.     That this Court render a Declaratory Judgment declaring the Approved Curriculum unconstitutional under the United Stated Constitution.

4.     That this Court render a Declaratory Judgment declaring the Approved Curriculum void as an *utlra vires* act.

5.     That this court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment.

6.     That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order.

7.     That this Court award Plaintiffs the reasonable costs and expenses of this action, including attorneys' fees, in accordance with 42 U.S.C. § 1988.

8.     That this Court award Plaintiffs such damages as are just and appropriate.

9.     That this Court grant such other and further relief as this Court deems equitable and

just under the circumstances.

Dated:  May 1, 2005

                              Respectfully submitted,


_____          _____
John R. Garza, Bar No. 01921              Mathew D. Staver*
17 W. Jefferson Street                    Erik Stanley*
Rockville, MD 20850                       Rena M. Lindevaldsen*
Tel: 301.340.8200                         210 East Palmetto Avenue
Fax: 301.294.6159                         Longwood, Florida 32750
                                          Tel: 407-875-2100
Local Counsel for Plaintiffs              Fax: 407-875-0770

                                          Counsel for Plaintiffs

                                          *Pro Hac Applications Submitted


Verified Complaint - Page 43

**VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing; that the facts alleged are true, to the best of my knowledge and belief. I understand that a false statement will subject me to penalties of perjury.

_____

PFOX

STATE OF MARYLAND

COUNTY OF MONTGOMERY

The foregoing instrument was acknowledged before me this ____ day April, 2005, and executed by _____, who is personally known to me or who has rproduced identification and who took an oath/affirmed.

_____

Notary Public

**VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing; that the facts alleged are true, to the best of my knowledge and belief. I understand that a false statement will subject me to penalties of perjury.

_____

Citizens for a Responsible Curriculum

STATE OF MARYLAND
COUNTY OF MONTGOMERY

The foregoing instrument was acknowledged before me this ____ day April, 2005, and executed by _____, who is personally known to me or who has rpoduced identification and who took an oath/affirmed.

_____
Notary Public